Bryan RECTOR, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. CX–85–87.**

Court of Appeals of Minnesota.

June 25, 1985.

Terence L. Meany, Austin, John D. Hagen, Minneapolis, for appellant.

Robert R. Dunlap, Rochester, for respondent.

Heard, considered and decided by PARKER, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant Bryan Rector (Rector) from a summary judgment award to respondent State Farm Mutual Automobile Insurance Company (State Farm) on Rector's declaratory judgment action which sought to hold an exclusionary clause in State Farm's policy ambiguous or, alternatively, void as against public policy. We reverse.

## FACTS

On December 23, 1984, Rector was seriously injured in an accident involving three motor vehicles. The drivers of those vehicles were Messrs. Lewis, Mauer, and Strong.

The Lewis vehicle stalled from lack of fuel in the traveling lane of a public highway. The Mauer vehicle parked in front of and faced the Lewis vehicle to assist in jumpstarting it. At the time of the accident, Rector, a passenger in the Lewis vehicle, was between the two vehicles, attempting to jumpstart the Lewis vehicle. The Lewis vehicle was struck from behind by the Strong vehicle. Rector's legs, pinned between the Lewis and Mauer vehicles, were crushed in the accident.

Strong and Mauer carried liability insurance policies; Lewis was uninsured. Rector settled his claim against Strong for $25,000 on a $25,000 policy. Rector settled his claim against Mauer for $15,000 on a $25,000 policy, due to questions as to the extent of Mauer's liability. Rector also received $100,000 from State Farm for his claim as to Lewis, pursuant to uninsured motorist coverage issued to his father, Charles Rector. At the time of the accident, Rector was an insured under the terms of the State Farm policy.

Charles Rector's insurance policy with State Farm included both uninsured and underinsured motor vehicle coverage. Each was purchased with a separate premium. Rector sought also to recover the $50,000 per person limit on the underinsured coverage on the grounds that the insurance payments already made were inadequate to compensate for his injuries. State Farm refused to pay Rector any underinsurance benefits, citing the following exclusionary clause in Charles Rector's policy:

THERE IS NO COVERAGE UNDER COVERAGE W:

1. FOR *BODILY INJURY* TO AN INJURED:

   a. WHILE *OCCUPYING,* OR

   b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

2. IF COVERAGE U APPLIES TO THIS ACCIDENT.

(Emphasis in the original; coverage W is underinsured motorist coverage; coverage U is uninsured motorist coverage.)

The parties entered into a stipulation of facts and submitted the matter to the trial court on cross-motions for summary judgment. The trial court upheld the exclusionary clause and granted summary judgment in favor of State Farm. The parties did not stipulate as to the extent of Rector's injuries or the alleged inadequacy of compensation therefor. These facts remain in dispute.

## ISSUES

1. Is the exclusionary clause ambiguous?

2. Does the exclusionary clause violate public policy?

## ANALYSIS

1. Rector argues that the exclusionary clause is ambiguous because conditions 1 and 2 may be read as either conjunctive or disjunctive. If they are conjunctive, he asserts that this accident would be covered under the policy.

■ This argument is without merit. The clause is not reasonably subject to the interpretation urged by Rector. We conclude the clause clearly states that if uninsured motorist coverage applies to an accident, then underinsured motorist coverage cannot apply to that accident. Inasmuch as we conclude the clause is not reasonably subject to more than one interpretation, there is no ambiguity. *Columbia Heights*

*Motors v. Allstate Insurance Co.,* 275 N.W.2d 32, 34 (Minn.1979).

Arguably, any perceived ambiguity lies not with the clause itself, but with the fact that the average insured, in reading the clause, would not foresee that, in a multiple car accident involving both uninsured and underinsured drivers, the insured's recovery is limited to the maximum benefits for uninsured motorist coverage on the policy regardless of the extent of the injuries incurred.

2. Before reaching the public policy issue, we must address State Farm's argument that an exclusionary clause cannot be held contrary to public policy unless it violates specific provisions or policies of the No-Fault Act. The statutory history regarding underinsured motorist coverage is relevant to this argument.

In 1974, when the No-Fault Act was enacted, underinsured motorist coverage was incorporated into the Act as supplementary, mandatorily-offered coverage. *Burgraff v. Aetna Life & Casualty Co.,* 346 N.W.2d 627, 631 (Minn.1984). *See* Minn. Stat. § 65B.49, subd. 6 (1974). Effective January 1, 1975, the No-Fault Act required that insurance companies offer underinsured motorist coverage to purchasers of motor vehicle insurance. Minn.Stat. § 65B.49, subd. 6 (1974). This requirement was repealed by the legislature in 1980. Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980). Since 1980, there have been no further legislative enactments regarding underinsured motorist coverage and such coverage remains an optional offer in Minnesota.

State Farm, relying upon the vigorous dissent in *Burgraff,* contends this indicates that underinsured motorist coverage is now considered by the legislature to be solely a matter of contract between the insurer and the insured. *Burgraff,* 346 N.W.2d at 632.

This argument, however, is negated by the supreme court's interpretation of the effect of the repeal of subdivision 6 in the majority opinion in *Burgraff,* and by a reasonable extension of the rationale in *Amer-*

*ican Motorist Ins. Co. v. Sarvela,* 327 N.W.2d 77 (Minn.1982). In *Sarvela,* the trial court reasoned that, inasmuch as underinsured motorist coverage was optional, the legislative policy favoring underinsured motorist coverage was insufficient to void the exclusionary clause at issue. *Sarvela,* 327 N.W.2d at 78.

The insurer in *Sarvela* on appeal to the supreme court argued that the trial court's determination should be affirmed because the supreme court only voided policy exclusions when they referred to coverage that was mandatory. The supreme court found this to be "an incorrect characterization of the law" and stated:

> In cases with very similar fact patterns, this court has voided policy exclusions under the then-optional uninsured motorists statute. (Citations omitted)

*Id.,* 327 N.W.2d at 79.

Relevant to this court's consideration here, the supreme court in *Sarvela* held:

> It is true that underinsured motorist coverage is not required to be included in the policy, as uninsured motorist coverage is. However, once the supplemental coverages have been offered and accepted, the insurer may not, under Minnesota law refuse to "write them up" and provide them to its insured. Citing *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980).

*Sarvela,* 327 N.W.2d at 79.

We recognize that *Sarvela* is distinguishable in that, at the time of the accident in *Sarvela,* the mandatory offer of underinsured motorist coverage was still required pursuant to the No-Fault Act. However, the majority in *Burgraff,* addressing an argument similar to that raised here by State Farm regarding the effect of the repeal of subdivision 6, states:

> But * * * the fact that an offer of underinsured motorist coverage is not mandatory or that the coverage itself is not required to be provided, as it is for uninsured coverage, does not mean that unin-

sured and underinsured coverages must be treated differently.

*Burgraff,* 346 N.W.2d at 630.

■ Thus, we conclude that State Farm's argument that underinsured motorist coverage is now solely a matter of contract between insurer and insured must fall.

Rector's argument that the exclusionary clause violates public policy is compelling.

> The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.

*Myers v. State Farm Mutual Automobile Insurance Co.,* 336 N.W.2d 288, 291 (Minn. 1983).

Surely, if Rector's damages are determined to exceed the compensation already paid to him, then the exclusionary clause, when applied to this multiple vehicle accident with uninsured and underinsured drivers, violates the purpose of underinsured motorist coverage.

■ In two recent cases, this court has relied on the rule that, inasmuch as uninsured motorist coverage and underinsured motorist coverage are mutually exclusive, a tortfeasor cannot be both uninsured and underinsured. *Berg v. Western National Mutual Insurance Co.,* 359 N.W.2d 726 (Minn.Ct.App.1984); *Murphy v. Milbank Mutual Insurance Company,* 368 N.W.2d 753 (Minn.Ct.App.1985). However, *Berg* and *Murphy* are predicated on facts substantially distinguishable from the facts now before the court.

In *Berg* and *Murphy,* the insured was injured in an accident with a single, uninsured motorist. After collecting uninsured motorist benefits, the plaintiffs in *Berg* and *Murphy* argued they were also entitled to underinsured motorist coverage. Essentially, they were attempting to improperly convert uninsured motorist coverage into underinsured motorist coverage, thereby

increasing their benefits. In contrast to *Berg* and *Murphy*, Rector was injured in a multiple vehicle accident which involved both uninsured and underinsured tortfeasors.

Furthermore, should this court adopt the position urged by State Farm, the result would be contrary to that line of precedent established by *Van Tassel v. Horace Mann Insurance Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973). *See also Taylor v. Great Central Insurance Co.*, 305 Minn. 446, 234 N.W.2d 590 (1975); *Pleitgen v. Farmers Insurance Exchange*, 296 Minn. 191, 207 N.W.2d 535 (1973); *Brunmeier v. Farmers Insurance Exchange*, 296 Minn. 328, 208 N.W.2d 860 (1973). Common to these cases is a disallowance of exclusionary clauses which deny payment of benefits for an accident when they would otherwise apply but for the fact that benefits already had been paid pursuant to other coverages.

Finally, State Farm argues that the cost of Rector's coverage is computed on the assumption that the exclusionary clause is valid, and asserts that the insureds received that for which they bargained. We are not persuaded by this argument. While the language of the clause at issue here is not ambiguous, it is unlikely that a prospective insured would fully comprehend all possible applications of the exclusionary clause. Consequently, it is more probable that an insured such as Rector would not have the coverage for which he thought he bargained and for which premiums were paid. We do not believe the legislature would intend such a result.

## DECISION

1. The exclusionary clause is not ambiguous.

2. The exclusionary clause violates public policy when applied to a multiple vehicle accident with both uninsured and underinsured tortfeasors.

Reversed.