**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Ocie BROWN, Defendant.**

**Civ. A. No. 89–0175–A.**

United States District Court, W.D. Virginia, Abingdon Division.

April 24, 1990.

---

Larry B. Kirksey, Bristol, Va., for plaintiff.

Timothy L. Forbes, Grundy, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This matter is before the court on the plaintiff's motion for summary judgment. The plaintiff, Allstate Insurance Company ("Allstate"), brought this action in order to obtain a declaration of its rights and obligations under the uninsured motorist provisions of an automobile liability insurance policy. Allstate relies on 28 U.S.C. § 1332 as the basis for this court's jurisdiction.

## BACKGROUND

Ocie Brown suffered an accident on August 2, 1986, while she was driving an automobile owned by Mr. Doffie Hurley. Brown claims that another driver, whose identity remains unknown to her, caused her to leave the roadway and drive over an embankment in order to avoid a head-on collision. Accordingly, Brown filed a motion for judgment against John Doe in the Circuit Court of Buchanan County, Virginia.

Copies of the motion for judgment were served on two insurance companies, Allstate and the Colonial Insurance Company of California ("Colonial").[1] At the time of the accident, Brown's husband maintained a policy with Allstate, which afforded uninsured motorist coverage to Brown as a member of her husband's household. Similarly, Hurley held a policy with Colonial, which provided uninsured motorist coverage for persons while occupying the vehicle which Brown was driving at the time of her accident.

---

1. The record before the court offers no suggestion as to the point in time at which Allstate was served. On its face, the motion for judgment directs that Colonial be served but contains no reference to Allstate.

Brown reached a settlement with Colonial, by which she received the sum of $1000. In return, Colonial was relieved of any liability to her which Colonial might have sustained as a result of her accident.[2] Evidently, Hurley's policy with Colonial covered bodily injuries resulting from an accident with an uninsured motorist to the extent of $25,000 per person and $50,000 per accident. Brown's suit against John Doe remains pending. Allstate was given no notice of the settlement between Brown and Colonial prior to its execution.[3]

Allstate now seeks to have this court declare that it is relieved of any obligation to Brown under her husband's policy because of her settlement with Colonial. The Allstate policy contains an "other insurance" clause, to the effect that "[w]ith respect to an insured while occupying a motor vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance." Exhibit A at 17. In addition, an exclusion in the policy provides with regard to uninsured motorist coverage that "[t]his insurance does not apply ... to bodily injury or property damage with respect to which the insured or his legal representative shall, without the consent of [Allstate], make any settlement with any person or organization who may be legally liable therefor." Exhibit A at 13. As counsel for Brown admits, the Supreme Court of Virginia has upheld this type of provision as it applied in *Virginia Farm Bureau v. Gibson*, 236 Va. 433, 374 S.E.2d 58 (1988).

## JURISDICTION

Brown has suggested that the court lacks jurisdiction over this dispute. Specifically, she contends that the amount in controversy requirement of 28 U.S.C. § 1332 is not met. For the court to have jurisdiction under section 1332, the amount in controversy must exceed $50,000.[4] Allstate has amended its complaint to show that the applicable limit of its coverage is $100,000. Dismissal for lack of subject matter jurisdiction is proper only where the court can determine to a "legal certainty" that the amount in controversy is insufficient. *Heavner v. State Auto. Ins.*, 340 F.Supp. 391, 393 (W.D.Va.1972).

"If there is one situation where the amount of a claim can be determined with legal certainty, it is in a case when a claim is asserted on an insurance policy limiting liability." *Payne v. State Farm Mut. Auto. Ins. Co.*, 266 F.2d 63, 64 (5th Cir. 1959). In the usual case of this kind, where the insured seeks to recover to the fullest extent of coverage, the court can determine the amount in controversy by reference to the face of the policy. *See, e.g., Doucet v. Travelers Ins. Co.*, 362 F.2d 263 (5th Cir.1966); *Carpenter v. Illinois Centr. Gulf R. Co.*, 524 F.Supp. 249, 253 (M.D.La.1981); *Heavner*, 340 F.Supp. at 393. This case is made difficult, however, by the fact that Brown seeks a judgment of only $50,000 plus costs in her state court action. Where the insured does not seek to recover the maximum under the policy, the court cannot rely exclusively on the policy limit as the measure of the amount in controversy. *See Maryland Cas. Co. v. Baker*, 196 F.Supp. 234, 236 (E.D.Ky.1961).

Following Judge Dalton's holding in *Heavner*, the court concludes that the costs which Brown seeks as part of her state court action may be counted as part of the amount in controversy in the present action. *Heavner*, 340 F.Supp. at 393. The

---

2. Inasmuch as the settlement agreement recites specifically that Colonial made no representations as to the likelihood of Brown's recovery against Allstate, and as it appears that Brown was represented by counsel since Brown filed her motion for judgment with the aid of present counsel in 1987 and the settlement occurred in 1988, the court has no reason to suspect that the settlement between Colonial and Brown involved any fraud or overreaching on the part of Colonial.

3. The court cannot tell whether Allstate had any notice of the accident or the suit against John Doe prior to Brown's settlement with Colonial. See note 1, *supra*.

4. Allstate's complaint was filed on October 5, 1989, after the effective date of the amendment to section 1332 which raised the amount in controversy requirement from $10,000.

court observes, without deciding, that like the statute at issue in *Heavner*, the Virginia statute may require Allstate to pay Brown's costs if Allstate is otherwise liable to Brown for whatever judgment she might obtain in her state court action. *See* Va. Code Ann. § 38.2–2206A. Thus, following the contents of Brown's motion for judgment as well as the terms of the Allstate policy, the court cannot conclude that the amount in controversy does not exceed $50,000. *See, e.g., Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir.1964) (claim and policy limits exceed jurisdiction amount); *Automobile Club Ins. Co. v. Craig*, 328 F.Supp. 988, 989 (E.D.Ky.1971) (same); *Travelers Ins. Co. v. Crane*, 94 F.Supp. 44, 46 (E.D.Mich.1950) (same).

In addition, the court is mindful of decisions which have minimized the importance of the insured's claim or failure to make a claim to the determination of the amount in controversy where the policy limits exceed the jurisdictional amount. For example, in *Commercial Cas. Ins. Co. v. Humphrey*, 13 F.Supp. 174 (S.D.Tex.1935), the court explained that "[t]he test of jurisdiction is not what Pierce [the injured party] may claim against Humphrey [the insured] or the plaintiff [the insurer], but the maximum amount for which the plaintiff may be liable under the policy." *Id.* at 178. *See also Builders & Manufacturers Mut. Cas. Co. v. Paquette*, 21 F.Supp. 858, 863–64 (D.Me.1938) (same). Likewise, noting the possibility that the injured party could amend its complaint to state additional damages within the coverage of the policy, the court ruled in *Morgan v. Liberty Mut. Ins. Co.*, 261 F.Supp. 709 (D.S.C.1966) that "[t]he amount of the [injured party's] claim [in state court] is not controlling here, for the action seeks a declaratory judgment of rights and/or responsibilities under defendant's policy and the possible liability exceeds the statutory minimum." *Id.* at 712. *See also Security Ins. Co. v. Jay*, 109 F.Supp. 87, 89 (D.Minn.1952) ("The mere fact that a claim has not been filed should not determine if the court does or does not have jurisdiction"). The court cannot conclude with legal certainty that the jurisdic-

tional requirement is not met in this case as the policy limit is over $50,000 and Brown remains free to amend her motion for judgment to seek a judgment of more than the jurisdictional minimum.

## DISCUSSION

■ In reviewing the merits of Allstate's motion, the court must begin with Brown's argument that the consent-to-settlement clause does not apply to a settlement with Colonial. At the time of Brown's settlement with Colonial, Brown had not obtained a judgment against an uninsured motorist. Colonial could not have been held liable under its policy with Hurley at that time. See *State Farm Mut. Auto. Ins. Co. v. Kelly*, 238 Va. 192, 195, 380 S.E.2d 654, 656 (1989); *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.*, 216 Va. 926, 929, 223 S.E.2d 901, 904 (1976). Nevertheless, the court rejects Brown's argument as an exaltation of form over substance. Colonial may have been liable for Brown's injuries upon the satisfaction of the conditions precedent to coverage under its policy with Hurley.

Allstate relies on the holding in *Gibson*. *Gibson* involved two tort-feasors, including an insured motorist as well as a "John Doe." Before trial, the accident victim settled with the insured motorist for $35,000. The jury found John Doe liable for damages in the amount of $70,000. When the accident victim attempted to recover part of the judgment against John Doe under the uninsured motorist provisions of his own policy, his insurer refused to pay. 236 Va. at 436, 374 S.E.2d at 60.

The accident victim filed suit against his insurer, who raised the insured's violation of the policy's consent-to-settlement clause as a defense. That trial court concluded that the consent-to-settlement clause was void. The supreme court reversed.

The court justified its decision in theoretical terms:

> In Virginia, uninsured motorist protection does not provide insurance for an uninsured motorist; it provides insurance to the insured motorist. In effect it is a

safety net to give an injured insured a fund from which to recover where the tort-feasor either has no insurance or has inadequate insurance. By its very nature, uninsured motorist coverage is not intended to be the ultimate source of payment where any tort-feasor liable in part for the injury to the insured has adequate resources to pay the judgment. The consent-to-settlement clause protects the insurer's power to preserve potential sources of recovery. Thus, the clause prevents an uninsured motorist carrier from paying a claim when another source of funds should pay.

*Id.* at 438, 374 S.E.2d at 61–62. The jury found that the accident victim has sustained damages in the amount of $70,000. The insured tort-feasor in *Gibson* was covered up to $100,000. In Virginia, the liability of joint tort-feasors is joint and several. Consequently, if the accident victim had not settled with the insured tort-feasor, the tort-feasor's insurer might have been made to answer for the entirety of the victim's damages and the victim would not have had to resort to his uninsured motorist coverage.

Of course, in the present case, Brown's settlement with Colonial can have no impact on Allstate's subrogation rights. As the only tort-feasor in the case is the John Doe, who presumably has no relationship whatsoever with Colonial, Colonial like Allstate could be liable only as an uninsured motorist carrier. Nevertheless, Allstate's policy does contain the "other insurance" clause, which would require that as between Allstate and Colonial, Colonial should be primarily responsible for whatever judgment Brown might obtain against John Doe.

The Virginia precedents dealing with "other insurance" clauses lead the court to conclude that this clause in Allstate's policy is valid and enforceable. Thus, in *Cunningham v. Insurance Co. of N. Amer.*, 213 Va. 72, 189 S.E.2d 832 (1972), the plaintiff's decedent died as the result of an accident he suffered while riding in someone else's car. The court concluded that the car owner's insurance was primary and that the decedent's insurance was excess.

*Id.* at 74, 189 S.E.2d at 833–34. In addition, the court stated that "if the uninsured motorist coverage afforded by the [owner's] policy is sufficient to satisfy the plaintiff's judgment, there is no liability under the [decedent's] policy which provided only excess uninsured motorist coverage." *Id.* at 74, 189 S.E.2d at 834.

Similarly, in *State Farm Mut. Ins. Co. v. United Services Auto. Ass'n*, 211 Va. 133, 176 S.E.2d 327 (1970), the accident victim made uninsured motorist claims on the policies of her father, the owner of the car, and the family of the driver of the car. The court concluded that as between these three policies, the car owner's policy was primary. In holding that the other insurance clauses (which were the same in all three policies) were valid, the court observed:

Code § 38.1–381(b) [now § 38.2–2206A] requires that the insured be paid "all sums" he is legally entitled to recover as damages from the uninsured motorist within the limits of the policy. The excess coverage clause does not conflict with that requirement, but *only requires the exhaustion of the primary insurance ... before the excess insurance comes into play.*

*Id.* at 138, 176 S.E.2d at 331 (emphasis added).

█ The holdings of *Cunningham* and *United Services* require that Allstate be regarded as the excess insurer as between Allstate and Colonial. Moreover, the two cases suggest that the exhaustion of Colonial's coverage is prerequisite to Allstate's liability as an excess insurer. The courts of several other jurisdictions have reached that conclusion. Thus, for example, Oklahoma's supreme court applied language in *Hibbs v. Farmers Ins. Co.*, 725 P.2d 1232 (Okla.1985) which is remarkably similar to the Virginia supreme court's holding in *United Services:*

The issue in this case is whether settlement with the primary [uninsured motorist] carrier for less than the policy limits effectively negates recovery from the secondary [uninsured motorist] carrier

because of the "excess" coverage clause....

The effect of the excess insurance provision in Farmers uninsured motorist policy was to make Farmers liable only after the limits of the primary policy (Firemen's Fund) were exhausted. *Farmer[s'] policy would come into play only if the Firemen's Fund policy limits were exhausted which did not occur.*

In the present case the limits of the primary policy were not exhausted, therefore, Farmers uninsured motorist coverage is not available to Hibbs.

*Id.* at 1233 (emphasis added). *See also Duhe v. Maryland Cas. Co.,* 434 So.2d 1193 (La.Ct.App.1983); *Farmers Ins. Co. v. Woodruff,* 127 Ariz. 196, 619 P.2d 24 (1980); *Gaught v. Evans,* 361 So.2d 1027 (Ala.1978).

■ Brown settled with Colonial for only $1000 when the limit of Colonial's coverage was $25,000. The court cannot conclude that Brown may recover from Allstate, the excess insurer, when she has settled with the primary insurer in violation of Allstate's consent-to-settlement clause and for an amount well below the limits of Colonial's coverage.[5] Even though the present case does not involve the impairment of Allstate's subrogation rights, the court believes that the Virginia supreme court following *Gibson* would enforce the consent-to-settlement clause as it applies in this case. Here, as in *Gibson,* the clause "protects the insurer's power to preserve potential sources of recovery" and "prevents an uninsured motorist carrier from paying a claim when another source of funds should pay."

In reaching this conclusion, the court concurs with the reasoning expressed in *Smith v. Government Employees Ins. Co.,* 558 P.2d 1160 (Okla.1976):

A settlement between an insurance company which is primarily liable and its insured, even though a full, final and complete settlement, does not affect the priority of payment, unless the amount of the settlement exhausts the policy limits.

To hold otherwise would allow companies primarily liable to transfer liability by making token settlements. Such a holding would not give effect to the clear, unambiguous language of excess insurance clauses.

*Id.* at 1162. The court offers no opinion as to whether Brown could have recourse against any other party. Because of her violation of the consent-to-settlement clause in the Allstate, however, Brown cannot recover from Allstate.

Accordingly, the court will issue an Order granting Allstate's motion for summary judgment.

---

**5.** The court is not unaware of the variety of approaches which other courts have taken in cases of this kind. Some courts would not enforce the consent-to-settlement clause in this context, where the insured has settled with the primary insurer. *See, e.g., Wescott v. Allstate Ins. Co.,* 397 A.2d 156 (Me.1979) (passenger's insurer liable despite passenger's settlement with passenger's settlement with driver/owner's insurer for policy limits); *Lebs v. State Farm Mut. Auto. Ins. Co.,* 568 S.W.2d 592 (Mo.Ct.App. 1978) (passenger's insurer liable despite passenger's settlement with driver/owner's insurer for less than policy limits). Other courts have refused to enforce excess clauses to the extent they would require exhaustion of the primary coverage. *See, e.g., Repasy v. Nationwide Ins. Co.,* 67 Ohio App.2d 118, 425 N.E.2d 959 (1980) (passenger's insurer liable despite passenger's settlement with driver/owner's insurer for less than policy limits); *see also Mississippi Farm Bureau Mut. Ins. Co. v. Garrett,* 487 So.2d 1320 (Miss.1986); *American Bankers Ins. Co. v. Stack,* 208 N.J.Super. 75, 504 A.2d 1219 (1984); *American Motorists Ins. Co. v. Briggs,* 514 S.W.2d 233 (Tex.1974). Still other courts have held the excess insurer liable for the excess of the insured's claim over the limits of the primary insurer's coverage despite the insured's settlement with the primary insurer for less than policy limits. *See, e.g., Miller v. Safety Mut. Cas. Corp.,* 497 So.2d 1273 (Fla.Ct.App.1986); *Schweighart v. Country Mut. Ins. Co.,* 122 Ill.App.3d 40, 77 Ill. Dec. 230, 460 N.E.2d 89 (1984). The court cannot conclude, however, that Virginia's supreme court would adopt any of these rules.